**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
RAMEL SMITH,

        *Plaintiff,*

     *v.*

INSTITUTE FOR COMMUNITY LIVING, INC.,

        *Defendant.*
-------------------------------------------------------------------x

**16 CV 9983**

**COMPLAINT**

Plaintiff Ramel Smith, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant Institute for Community Living, Inc., as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff Ramel Smith ("Plaintiff" or "Mr. Smith") seeks damages and costs against Institute for Community Living, Inc. ("Defendant" or "ICL"), for discriminating against him based on his disability by terminating his employment because he became disabled, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL") N.Y.C. Admin. Code §§ 8-101–131.

2.     Plaintiff also seeks damages and costs against Defendant for retaliating against him for requesting a reasonable accommodation, in violation of the ADA and the NYCHRL.

3.     Plaintiff suffered a back injury in an on-the-job car accident and requested unpaid time off to recover.  Defendant granted Plaintiff the requested leave, then terminated him immediately after he was cleared to return to work.

**JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

4.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims arising under the ADA.

5.     Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's claims arising under the NYCHRL, as those claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

6.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

7.     All conditions precedent to maintaining this action have been fulfilled.

8.     Plaintiff filed a charge of discrimination related to the discriminatory acts described in this Complaint with the New York City Commission on Human Rights, which dismissed the claim without prejudice for administrative convenience.

9.     The Equal Employment Opportunity Commission issued a Right-to-Sue Letter, dated December 7, 2016, related to the discriminatory acts described in this Complaint.

10.    This action was properly instituted within 90 days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

11.    Plaintiff respectfully requests a trial before a jury.

## PARTIES

12.    At all times relevant hereto, Plaintiff was and is a resident of New York County in the State of New York.

13.    At all times relevant hereto, Defendant was and is a domestic business corporation with its principal place of business located at 46 West 74th Street, New York, NY 10023.

## STATEMENT OF FACTS

14.    Mr. Smith received a bachelor's degree in Health Science in 2007 from Mercy College and a master's degree in Biomedical Informatics in 2016 from Rutgers University.  Mr.

2

Smith has also received a Health Insurance Portability and Accountability Act ("HIPAA") Compliance certificate and a certificate for motivational interviewing from Hunter College and has taken several counseling courses.

15.     Mr. Smith's relevant work experience includes one year working as a Care Coordinator for the Young Adult Institute, where his job responsibilities included assisting individuals with developmental disabilities with daily activities, and four years working as a Case Manager at Metropolitan Hospital, where his job responsibilities included caring for clients with mental health and substance abuse disorders, among other medical conditions.

16.     On January 3, 2012, ICL hired Mr. Smith as a Care Coordinator for ICL's Mental Health Population, earning an annual salary of $38,000.

17.     As a Care Coordinator, Mr. Smith's job responsibilities included caring for homebound elderly and disabled patients, which required him to spend much of his work day driving "in the field."

18.     On July 22, 2014, Mr. Smith had an on-the-job car accident.

19.     As a result of this accident, Mr. Smith suffered neck, shoulder, and back injuries, which substantially limited his ability to walk, reach, lift, bend, and perform other tasks.

20.     Mr. Smith took unpaid medical leave for approximately twelve (12) weeks after the accident.

21.     Mr. Smith was in physical therapy for approximately eight (8) months for lower back pain due to the back injury he sustained in the accident.

22.     While Mr. Smith was out on medical leave, ICL's Human Resources Executive, Angelyce Scott, commenced an investigation of Mr. Smith for allegedly violating ICL's timekeeping policy.

23.     Specifically, Ms. Scott claimed that, during a time period prior to his accident, Mr. Smith had clocked out while in the field instead of clocking out after returning to the office.

24.     Ms. Scott did not make Mr. Smith aware of her investigation at the time she commenced it.

25.     In and around the end of February 2015, Mr. Smith was medically cleared to return to work.

26.     After receiving medical clearance, Mr. Smith returned to work at ICL.

27.     The same day that he returned to ICL, Mr. Smith learned of Ms. Scott's investigation.

28.     That same day, after Mr. Smith learned of the investigation, Ms. Scott immediately suspended Mr. Smith's employment, putting him on administrative leave pending her investigation.

29.     Ms. Scott's investigation did not find that Mr. Smith had violated any of ICL's timekeeping policies.

30.     However, Ms. Scott and ICL continued to search for pretext to terminate Mr. Smith's employment after Ms. Scott's "investigation" failed to uncover any wrongdoing.

31.     Ms. Scott proceeded to launch another investigation while Mr. Smith remained suspended on administrative leave, purportedly responding to "deficiencies" in patient charts that Mr. Smith had prepared prior to his medical leave.

32.     Ms. Scott's investigation subjected Mr. Smith's charts to far stricter standards of review than those applied to the charts of any other Care Coordinator.

33.     The alleged "deficiencies" in the charts were present in less than 20% of Mr. Smith's charts.

34.     This rate was typical for Care Coordinators at ICL and reflected problems that many Care Coordinators faced.  For instance, as clients often did not consistently provide Care Coordinators with updated addresses and phone numbers, it was common for charts to be missing some information while Care Coordinators found new contact information for clients.

35.     However, no other Care Coordinators were disciplined for charting deficiencies; Mr. Smith was the only employee who was targeted.

36.     Further, many of the purported deficiencies were completely contrived.

37.     For example, ICL cited a mere typographical error as a deficiency, as well as deficiencies that Mr. Smith himself had raised with ICL and which were already being addressed.

38.     Ms. Scott never interviewed Mr. Smith as part of any investigation.

39.     On March 12, 2015, ICL summarily terminated Mr. Smith's employment, citing "several instances of charting deficiencies, including not having up-to-date contact information."

40.     In reality, ICL terminated Mr. Smith's employment because he became disabled and in retaliation for his request for a reasonable accommodation.

### CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Unlawful Termination in Violation of the ADA

41.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 40 with the same force as though separately alleged herein.

42.     The ADA prohibits an employer from discriminating against any qualified individual on the basis of that employee's disability in regards to hiring, discharge, and other terms, conditions, and privileges of employment.

43.     Defendant discriminated against Plaintiff based on his disability by terminating his employment because he became disabled.

44.     As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

45.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Unlawful Termination in Violation of the NYCHRL

46.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 45 with the same force as though separately alleged herein.

47.     The NYCHRL mandates that no employer discriminate against a qualified individual on the basis of disability in regard to terms and conditions of employment.

48.     Defendant discriminated against Plaintiff based on his disability by terminating his employment because he became disabled.

49.     As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

50.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of the ADA

51.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 50 with the same force as though separately alleged herein.

52.     The ADA prohibits an employer from retaliating against an employee because that employee has engaged in any protected activity under the ADA.

53.     Plaintiff engaged in protected activity under the ADA when he requested a reasonable accommodation for his disability, namely medical leave.

54.     Defendant retaliated against Plaintiff by terminating his employment for exercising his ADA-protected right to a reasonable accommodation.

55.     As a direct and proximate consequence of Defendant's conduct, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

56.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### FOURTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

57.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 56 with the same force as though separately alleged herein.

58.     The NYCHRL prohibits an employer from retaliating against an employee because that employee has engaged in any protected activity under the NYCHRL.

59.     Plaintiff engaged in protected activity under the NYCHRL when he requested a reasonable accommodation for his disability, namely medical leave.

60.     Defendant retaliated against Plaintiff by terminating his employment for exercising his NYCHRL-protected right to a reasonable accommodation.

61.     As a direct and proximate consequence of Defendant's conduct, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

62.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, the individually named Plaintiff respectfully requests that this Court grant the following relief:

A.      on Plaintiff's first claim, damages to be determined at trial;

B.      on Plaintiff's second claim, damages to be determined at trial;

C.      on Plaintiff's third claim, damages to be determined at trial;

D.      on Plaintiff's fourth claim, damages to be determined at trial;

E.      an award of pre-judgment and post-judgment interest;

F.      an award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

G.      such other and further relief as this Court deems appropriate.

Dated: New York, New York
       December 28, 2016

By:     s/ Walker G. Harman, Jr.
        Walker G. Harman, Jr. [WH-8044]
        Edgar M. Rivera [ER-1378]
        **THE HARMAN FIRM, LLP**
        *Attorneys for Plaintiff*
        220 Fifth Ave., Suite 900
        New York, New York 10001
        (212) 425-2600
        wharman@theharmanfirm.com
        erivera@theharmanfirm.com